## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**BEN H. SCOTT (#94592)**                                    **CIVIL ACTION NO.**

**VERSUS**                                                              **19-150-SDD-EWD**

**RICKY WILLIAMS, ET AL.**

## <u>NOTICE</u>

    Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

    In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein.  Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

    ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

    Signed in Baton Rouge, Louisiana, on December 5, 2019.

                                        **ERIN WILDER-DOOMES**
                                        **UNITED STATES MAGISTRATE JUDGE**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

BEN H. SCOTT (#94592)                                    CIVIL ACTION NO.

VERSUS                                                           19-150-SDD-EWD

RICKY WILLIAMS, ET AL.

MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Before the Court is a Motion to Dismiss ("Motion"),[1] filed on behalf of Defendants Ricky Williams, Walter Johnson, Jeremy Mitchell and West Harris.  The Motion is unopposed.  For the following reasons, the undersigned recommends the Motion be granted in part and denied in part.

I.    Background

Pro se Plaintiff, Ben H. Scott ("Plaintiff"), an inmate confined at the Dixon Correctional Institution ("DCI") in Jackson, Louisiana, instituted this action pursuant to 42 U.S.C. § 1983 against Ricky Williams, Walter Johnson, Jeremy Mitchell, and West Harris ("Defendants") alleging excessive force was used against Plaintiff in violation of his Eighth Amendment right under the United States Constitution to be free from cruel and unusual punishment.[2]

On a motion to dismiss, the well-pleaded facts must be accepted as true and any doubt is resolved in favor of the plaintiff.[3]  Plaintiff alleges the following facts.  On June 21, 2018, Plaintiff was being moved to another compound within DCI.[4]  While Plaintiff was waiting to be moved, he was placed in a "bull-pen."[5]  While in the bull-pen, Plaintiff was verbally abused by Ricky Williams ("Williams") and Walter Johnson ("Johnson").[6]  Specifically, Johnson cursed at Plaintiff

---

[1] R. Doc. 11.

[2] R. Doc. 1.

[3] *Jefferson v. Lead Indus. Ass'n, Inc.*, 106 F.3d 1245, 1250 (5th Cir.1997) (citing *Fernandez–Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284–85 (5th Cir.1993)); accord *Heitschmidt v. City of Houston*, 161 F.3d 834, 835 (5th Cir.1998).

[4] R. Doc. 1, p. 4.

[5] R. Doc. 1, p. 4.

[6] R. Doc. 1, pp. 6-7.

and directed him to sit down and wait to be moved.[7]  Plaintiff protested the manner in which

Johnson spoke to Plaintiff.   Williams told Plaintiff that he and Johnson could speak to Plaintiff as

they wanted.[8]  As a result of Plaintiff's protest, Williams ordered Johnson to bring Plaintiff into

Williams's office and close the door.[9]  Johnson complied and grabbed Plaintiff's arm to escort him

to Williams's office.[10]  Once in Williams's office, Williams threatened Plaintiff with "bust[ing]

[Plaintiff] in the face with [the] radio."[11]  Plaintiff informed the officers that he would continue to

defend his rights, at which time, Williams stated he was going to lock Plaintiff up.[12]  Plaintiff was

told to put his hands behind his back, but before he could do so, Williams and Johnson "jerked

Plaintiff's left arm in a malicious (real hard) matter [sic], causing injury to Plaintiff's left

shoulder."[13]   Plaintiff informed the officers that his shoulder was hurt, to which Williams

responded "F**k you and your shoulder" and instructed Johnson to place Plaintiff in a holding

cage.[14]  Thereafter, Johnson "grabbed Plaintiff by the same injured shoulder" to escort him out of

Williams's office, and Johnson stated "[g]et your ass out of here before I break your damn arm."[15]

After Plaintiff was placed in the holding cage, Williams and Johnson appeared in front of the

holding cage and proceeded to taunt Plaintiff; Williams warned Plaintiff that he had "a can of gas

coming and Lt. Mitchell and Lt. Harris has [sic] a surprise for you."[16]

     As to Mitchell and Harris, Plaintiff contends they conspired with each other to have another

inmate attack Plaintiff, although the Complaint does not allege that any attack ever occurred.[17]

---

[7] R. Doc. 1, pp. 6-7.
[8] R. Doc. 1, p. 7.
[9] R. Doc. 1, p. 8.
[10] R. Doc. 1, p. 8.
[11] R. Doc. 1, p. 8.
[12] R. Doc. 1, pp. 8-9.
[13] R. Doc. 1, p. 9.
[14] R. Doc. 1, p. 9.
[15] R. Doc. 1, p. 9.
[16] R. Doc. 1, p. 11.
[17] R. Doc. 1, pp. 14-18.

Plaintiff also generally alleges that Williams and Johnson conspired with Mitchell and Harris to cause bodily harm to Plaintiff.[18]  Plaintiff requests injunctive and monetary relief.[19]

## II.    Law & Analysis

### A.  Standard of Review

In *Bell Atlantic Corp. v. Twombly*,[20] and *Ashcroft v. Iqbal*,[21] the Supreme Court clarified the standard of pleading that a plaintiff must meet to survive a motion to dismiss pursuant to Rule 12(b)(6).  Specifically, "[f]actual allegations must be enough to raise a right to relief above the speculative level."[22]  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[23]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[24]  It follows that, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'"[25] "Where a Complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"[26]

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court "must accept as true all of the factual allegations contained in the Complaint."[27]  Further, "[a] document filed *pro se* is 'to be liberally construed' ... and 'a *pro se* Complaint, however inartfully pleaded,

---

[18] R. Doc. 1, p. 13.
[19] R. Doc. 1, pp. 19-20.
[20] 550 U.S. 544 (2007).
[21] 556 U.S. 662 (2009).
[22] *Twombly*, 550 U.S. at 555.
[23] *Iqbal*, 556 U.S. at 678.
[24] *Id.*
[25] *Id.* at 679.
[26] *Id.* at 678 (internal quotation marks omitted).
[27] *Erickson*, 551 at 94.

must be held to less stringent standards than formal pleadings drafted by lawyers.'"[28]  Moreover, the federal pleading rules simply require a "short and plain statement of the claim showing that the pleader is entitled to relief."[29] The task of the court is not to decide if the plaintiff will eventually be successful, but to determine if a "legally cognizable claim" has been asserted.[30] Notwithstanding, the court need not accept "a legal conclusion couched as a factual allegation,"[31] or "naked assertions [of unlawful conduct] devoid of further factual enhancement."[32]

### B. Exhaustion

Defendants contend that it is evident from the face of the pleadings Plaintiff failed to exhaust administrative remedies because Plaintiff states in his Complaint "A.R.P., was never answered."[33]  Defendants are correct that 42 U.S.C. § 1997e requires Plaintiff to exhaust administrative remedies available to him at the prison prior to filing a civil law suit in this Court with respect to prison conditions.[34]  Because failure to exhaust administrative remedies, as required by the Prison Litigation Reform Act ("PLRA"), is an affirmative defense, defendants bear the burden of proof concerning exhaustion both at trial and in pretrial motions.[35]  Further, the inmate plaintiff is not required to plead or demonstrate exhaustion in the complaint.[36]  A district court cannot rely on the allegations in a complaint to determine exhaustion unless the failure to exhaust is *certain*.[37]  In emphasizing that the burden is on defendants to prove that a plaintiff failed to exhaust administrative remedies, the Fifth Circuit has stated as follows:

---

[28] *Id.* (citation omitted).

[29] Fed. R. Civ. P. 8(a)(2).

[30] *Thompson v. City of Waco, Tex.*, 764 F.3d 500, 502–03 (5th Cir. 2014).

[31] *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

[32] *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).

[33] R. Docs. 11-1, p. 6; 1, p. 2.  Requests for administrative remedies are routinely referred to as "ARPs" and will be referred to this way in this Report.

[34] 42 U.S.C. § 1997e(a) provides: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

[35] *See Jones v. Bock*, 549 U.S. 199, 216 (2007).

[36] *Id.*

[37] *Torns v. Miss. Dept. of Corr.*, 301 Fed.Appx. 386, 389 (5th Cir. 2008).

> [W]here the complaint does not clearly show that the inmate failed to exhaust administrative remedies, it is defendants' job to raise and prove such an affirmative defense. This is particularly true here, where defendants possess the necessary information to assure the district court that additional administrative remedies were available to [plaintiff] or confirm that they were not.[38]

Satisfaction of the PLRA's exhaustion requirement in Louisiana requires that Plaintiff proceed through the two-step process established by the Louisiana Department of Public Safety and Corrections.[39] First, upon receipt of an ARP, prison officials have a 40-day period (reduced to 5 days in connection with a Prison Rape Elimination Act claim) during which, absent a requested extension or absent placement of the grievance on administrative backlog (because of other grievances still pending), they are obligated to provide a written response to the grievance.[40] If the inmate is not satisfied with the First Step Response, the inmate has five days within which to submit a Second Step appeal to the office of the Secretary of the Department, after which the Secretary's office has an additional 45 days from "receipt" of the inmate's appeal to file a final Second Step response.[41] No more than 90 days from the initiation to the completion of the process shall elapse, unless an extension has been granted.[42] If the inmate does not receive a response within the time period allowed at a particular step, the inmate may proceed to the next step.[43]

It is not certain from the face of Plaintiff's Complaint that Plaintiff failed to exhaust administrative remedies. For example, though Plaintiff states that his ARP was never answered, it is not clear whether Plaintiff proceeded through the steps of the administrative remedy procedure after the required amount of time had passed for each step or whether he failed to proceed through all steps. Additionally, the Complaint was filed in March 2019, more than 90 days after this

---

[38] *Id.* at 390.
[39] *See* 22 La. Admin. Code, Part I, § 325.
[40] *See* 22 La. Admin. Code, Part I, § 325(J)(1)(a).
[41] *See* 22 La. Admin. Code, Part I, § 325(J)(1)(b).
[42] *Id.*
[43] *See* 22 La. Admin. Code, Part I, § 325(J)(1)(c).

incident allegedly occurred in June 2018, so this is not a case where the administrative remedy procedure could not have been completed because enough time had not passed.  As the burden of proof is on Defendants to establish the affirmative defense of exhaustion and it is not clear from the face of the Complaint that Plaintiff's claims are unexhausted, it is preferable at this stage to maintain Plaintiff's claims and allow Defendants to produce evidence if they choose to raise the affirmative defense of exhaustion.

### C.  Conspiracy

A plaintiff who asserts conspiracy claims under civil rights statutes, such as § 1983, must plead the operative facts upon which their claim is based.[44]  "Bald allegations that a conspiracy existed are insufficient."[45]  Plaintiff has made nothing more than bare allegations that Defendants conspired against him.  Thus, Plaintiff's claims of conspiracy between the four Defendants fail as a matter of law.

### D.  Threats

Verbal threats and threatening gestures by prison guards do not amount to a constitutional violation.[46]  Though Plaintiff details Defendants' threats against him and says the threats placed him "in a 'fearful' state of mind," those threats do not amount to a constitutional violation.  Further, Defendants failure to abide by DCI's policies and procedures regarding verbal abuse and harassment does not constitute a violation of Plaintiff's federal statutory or constitutional rights. These allegations also fail to state a claim under § 1983.[47]

---

[44] *Lynch v. Cannatella*, 810 F.2d 1363, 1369-70 (5th Cir. 1987).
[45] *Id.*
[46] *Watson v. Winborn*, 67 F.Appx. 241 (5th Cir. 2003) *citing Calhoun v. Hargrove*, 312 F.3d 730, 733 (5th Cir. 2002) and *Robertson v. Plano City of Texas*, 70 F.3d 21, 24 (5th Cir. 1995).
[47] *Stanley v. Foster*, 464 F.3d 565, 569 (5th Cir. 2006), *quoting Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996); *Jackson v. Cain*, 864 F.2d 1235, 1253 (5th Cir. 1989).  *See also Woodard v. Andrus*, 419 F.3d 348, 1252-53 (5th Cir. 2005).

### E.  Excessive Force

Force is considered excessive in violation of the Eighth Amendment of the United States Constitution if it is applied maliciously and sadistically for the very purpose of causing harm rather than in a good faith effort to maintain or restore discipline.[48] "An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury."[49] The Eighth Amendment's prohibition against cruel and unusual punishment, however, necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that such force is not of a sort "repugnant to the conscience of mankind."[50] Factors to be considered in determining whether an alleged use of force has been excessive include the extent of injury sustained, if any; the need for the application of force; the relationship between the need for force and the amount of force utilized; the threat reasonably perceived by prison officials; and any efforts made to temper the severity of a forceful response.[51]

Because mere words cannot constitute excessive force, to establish an excessive force claim, a plaintiff must allege the application of some type of force. Johnson and Williams are the only Defendants against whom Plaintiff may have stated a claim for excessive force because they are the only Defendants that Plaintiff alleges applied any type of force.[52]  Accordingly, Plaintiff's Eighth Amendment claims against all other Defendants should be dismissed.

With respect to Plaintiff's claims regarding Johnson and Williams, only Johnson first applied force to Plaintiff when Johnson grabbed Plaintiff's arm to escort him to Williams's

---

[48] *Wilkins v. Gaddy,* 559 U.S. 34, 37 (2010), *quoting Hudson v. McMillian,* 503 U.S. 1, 7 (1992).
[49] *Wilkins*, 559 U.S. at 38.
[50] *Hudson*, 503 U.S. at 10.
[51] *Id.* at 7.
[52] *See Fennell v. Quintela*, 393 Fed.Appx. 150, 154 (5th Cir. 2010).

office.[53]  Plaintiff does not allege that Johnson's use of force in this first instance caused Plaintiff any injury.  Accordingly, the first instance where force was applied was not excessive and did not violate the constitution.

The second and final instance of force allegedly occurred when Johnson and Williams "jerked" Plaintiff's hands behind his back to prepare him to be moved to another section of the prison.  Plaintiff alleges he did not have time to place his own hands behind his back before Johnson and Williams jerked his arm.  Plaintiff contends this force caused a left shoulder injury.[54] Plaintiff says it felt as though his shoulder was broken and that the "shoulder joint…sticks out [and]…heal[ed] deformed."[55]  According to Plaintiff's allegations, he was not doing anything to warrant use of any force.[56]  As alleged by Plaintiff, there was no need for any use of force, the force ultimately utilized caused permanent injury to Plaintiff, there was apparently no threat justifying the use of force and Defendants did not make any effort to temper the severity of a forceful response. Viewing the facts in the light most favorable to Plaintiff, specifically considering the alleged lack of provocation and the injury resulting from the use of force, Plaintiff has stated a claim for excessive force against Johnson and Williams.[57]

Defendants allege, however, that they are entitled to qualified immunity.  The qualified immunity defense is a familiar one and, employing a two-step process, operates to protect public officials who are performing discretionary tasks.[58] Taking the facts as alleged in the light most favorable to the plaintiff, the Court considers whether the defendant's conduct violated the plaintiff's constitutional rights and whether the rights allegedly violated were clearly established

---

[53] R. Doc. 1, p. 8.
[54] R. Doc. 1, p. 9.
[55] R. Doc. 1, pp. 9-10.
[56] R. Doc. 1, pp. 8-9.
[57] *See, e.g.*, *Fennell*, 393 Fed.Appx. at 155 (inmate stated a claim for excessive force when prison officer grabbed handcuffed inmate's wrist and twisted it, resulting in injury); and *Hudson*, 503 U.S. at 7 (slamming a prisoner into walls was an excessive use of force when the prisoner was handcuffed and did nothing to provoke the officers).
[58] *Huff v. Crites*, 473 Fed.Appx. 398 (5th Cir. 2012).

8

at the time that the violation occurred. Under *Pearson v. Callahan*, courts have discretion to decide which of the two prongs of the analysis to address first. [59]  This inquiry is undertaken in light of the specific context of the case, not as a broad, general proposition. To determine whether a constitutional right was clearly established, The Court must decide whether it would have been clear to a reasonable state official that his conduct was unlawful in the situation he confronted. While ordinarily one who pleads an affirmative defense has the burden to establish his entitlement to that defense, where a defendant pleads qualified immunity and shows he is a governmental official whose position involves the exercise of discretion, the plaintiff has the burden to rebut the defense by establishing that the defendant's allegedly wrongful conduct violated clearly established law.[60]  To defeat the qualified immunity defense, a plaintiff's complaint must allege specific facts that, if proved, would show the official's conduct violated clearly established constitutional or statutory rights.  Although a plaintiff can file a detailed reply to address the assertion of the qualified immunity defense, that is only required if the complaint is not sufficiently detailed to create a genuine issue as to the illegality of the defendant's conduct. [61]  If the pleadings on their face show an unreasonable violation of a clearly established constitutional right, the assertion of the qualified immunity defense is insufficient to sustain a Rule 12(b)(6) motion to dismiss.[62]

Defendants do not contest that the Plaintiff had the constitutional right to be free from cruel and unusual punishment but do contest whether Plaintiff has put forth sufficient facts to show that Defendants violated that constitutional right under the circumstances presented.[63]  Defendants also

---

[59] 555 U.S. 223, 236 (2009) (concluding that the rigid protocol mandated in *Saucier v. Katz*, 533 U.S. 194 (2001) – that called for consideration of the two-ponged analysis in a particular order – should not be "regarded as an inflexible requirement").

[60] *Pierce v. Smith*, 117 F.3d 866, 871-72 (5th Cir. 1997) (quotations and citations omitted).

[61] *Schultea v. Wood*, 47 F.3d 1427, 1434 (5th Cir. 1995) (*en banc*).

[62] *Shipp v. McMahon*, 234 F.3d 907, 912 (5th Cir. 2000), *overruled in part on other grounds by McClendon v. City of Columbia*, 305 F.3d 314 (5th Cir. 2002) (*en banc*).

[63] R. Doc. 11-1, p. 14.

argue that their actions were not objectively contrary to clearly established law.[64]   Defendants contend that the use of restraints on Plaintiff was justified due to his violation of "rules" and subsequent transport to administrative segregation.[65]   Based upon Plaintiff's version of events, he had not violated any "rules," and there is no evidence that any disciplinary report was issued to Plaintiff.   Further, Plaintiff does not protest the mere use of restraints; rather, he protests the manner in which his arm was allegedly jerked, without provocation or need.

The law is clear that an unprovoked use of force that results in injury violates the Eighth Amendment.[66]   Because the pleadings on their face show an unreasonable violation of a clearly established constitutional right, the qualified immunity defense fails at the stage of the proceeding. Accordingly, Plaintiff's claims for excessive force against Johnson and Williams remain, with the following exceptions.

### 1. Monetary Damages against Johnson & Williams in their Official Capacities are Barred

To the extent Plaintiff seeks monetary damages against Johnson and Williams in their official capacities, those claims must be dismissed.  42 U.S.C. § 1983 does not provide a federal forum for a litigant who seeks monetary damages against either a state or its officials acting in their official capacities, specifically because these officials are not seen to be "persons" within the meaning of § 1983.[67]  In addition, in *Hafer v. Melo*,[68] the United States Supreme Court addressed the distinction between official capacity and individual capacity lawsuits and made clear that a suit against a state official in an official capacity for monetary damages is treated as a suit against the

---

[64] R. Doc. 11-1, p. 14.
[65] R. Doc. 11-1, p. 14.
[66] *See Fennell*, 393 Fed.Appx. at 155; *Hudson*, 503 U.S. at 7.
[67] *Will v. Michigan Department of State Police*, 491 U.S. 58, 71 (1989).
[68] 502 U.S. 21 (1991).

state and is therefore barred by the Eleventh Amendment.[69] Accordingly, any § 1983 claims asserted against Johnson and Williams in their official capacities for monetary damages are subject to dismissal.

### 2.  Plaintiff has Failed to State a Legitimate Claim for Injunctive Relief

The injunctive relief Plaintiff seeks is inappropriate.  Plaintiff requests that this Court charge Defendants with simple assault and malfeasance, reprimand Defendants, require Defendants to attend anger management,  and that this Court enjoin Defendants from taking further retaliatory measures against Plaintiff and his witnesses.[70]  Plaintiff's request that Defendants be charged with simple assault and malfeasance in office is not viable because decisions regarding whether to prosecute or file criminal charges against an individual lie within a prosecutor's discretion, and private citizens do not have a constitutional right to have an individual criminally prosecuted.[71]  Regarding the request that Defendants be reprimanded and required to attend anger management, federal courts ordinarily accord great deference to the internal administrative decisions of prison officials and to entertain a request such as is presented here would be against precedent and the public's interest, as well as a possible abuse of judicial resources.[72]  Finally, Plaintiff's request that Defendants be enjoined from taking further retaliatory measures must be denied because Plaintiff has not alleged any facts indicating he has been threatened with retaliatory measures.[73]  Accordingly, Plaintiff's requests for injunctive relief should be denied.[74]

---

[69] *Id*. at 25.

[70] R. Doc. 1, pp. 19-20.

[71] See *Linda R.S. v. Richard D.,* 410 U.S. 614, 619 (1973); *United States v. Batchelder,* 442 U.S. 114, 124 (1979); see also *Oliver v. Collins,* 914 F.2d 56, 60 (5th Cir.1990).

[72] *Ware v. Tanner*, Civil Action No. 12-2250, 2013 WL 5589506 at *10 (E.D. La. Oct. 10, 2013) *citing Royal v. Clark*, 447 F.2d 501, 502 (5th Cir. 1971); *Krist v. Smith,* 439 F.2d 146 (5th Cir.1971); *Haggerty v. Wainwright,* 427 F.2d 1137 (5th Cir.1970).

[73] *See Stevens v. Heard*, 674 F.2d 320, 324 (5th Cir. 1982).

[74] To the extent the Complaint attempts to assert a claim for deliberate medical indifference based on "carelessness" in medical care that "allowed plaintiff's left shoulder to heal deformed" (R. Doc. 1, p. 10), Plaintiff has failed to state a claim for deliberate medical indifference.  Plaintiff does not name any of the medical providers that allegedly provided improper medical care.  Further, this allegation sounds more in negligence than deliberate indifference, which is not a constitutional violation.

## RECOMMENDATION

**IT IS RECOMMENDED** that the Motion to Dismiss be **GRANTED IN PART AND DENIED IN PART**.

**IT IS FURTHER RECOMMENDED** that all of Plaintiff's claims against Jeremy Mitchell and West Harris be **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER RECOMMENDED** that Plaintiff's claims for conspiracy and threats by Walter Johnson and Ricky Williams, as well as Plaintiff's claims for injunctive relief and for monetary damages against Walter Johnson and Ricky Williams in their official capacities be **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER RECOMMENDED** that this matter be referred to the magistrate judge for proceedings on Plaintiff's remaining claims, *i.e.*, Plaintiff's claims against Walter Johnson and Ricky Williams for excessive force arising out of the incident wherein Walter Johnson and Ricky Williams allegedly "jerked" Plaintiff's arm to place his hands in handcuffs.

Signed in Baton Rouge, Louisiana, on December 5, 2019.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

12